673 P.2d 1074

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Michael W. MOULDS, Defendant-Respondent.**

**No. 14708.**

Court of Appeals of Idaho.

Dec. 6, 1983.

Jim Jones, Atty. Gen., by Lynn E. Thomas, Sol. Gen., and Dennis Johnson, Spec. Atty. Gen., Boise, for appellant.

Klaus Wiebe, Ada County Public Defender, Boise, for respondent.

BURNETT, Judge.

Michael Moulds stands accused of theft, burglary and robbery. The district court has entered a suppression order, barring the prosecutor from using as evidence at trial certain statements made by Moulds to police officers during a custodial interrogation. The court held that the statements had been obtained in violation of Moulds' constitutional right to have counsel present during the interrogation. The State of Idaho has appealed, contending that police interrogators are not required to honor a request for counsel unless the request is made unequivocally. The State also asserts that police communications with the accused in this case did not constitute "interrogation." We reject both of these contentions and affirm the suppression order.

In Part I of this opinion, we outline the constitutional origin and the scope of an accused person's right to have counsel present during a custodial police interrogation. We explain how procedural safeguards of these rights have evolved into per se tests of the admissibility into evidence of statements obtained from the accused. In Part II we examine the problem posed by an equivocal request for counsel. We adopt a legal standard governing the police response to such a request, and we apply that standard to the case before us. In Part III we focus on the meaning of the term "interrogation" and apply it to the police communications at issue here.

I

Our system of government, unlike many others, is founded upon the protection of individual liberties. The United States Constitution was not ratified until it had been broadened to include the first ten amendments comprising the Bill of Rights. The Idaho Constitution undertakes in its first article not to proclaim the powers of government, but to declare the rights of individuals. Among the liberties protected by both constitutions are the privilege

against self-incrimination and the right to counsel in criminal cases. The fifth amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." The sixth amendment provides that an accused person shall "have the assistance of counsel for his defense." Similar rights are secured by art. I, § 13, of the Idaho Constitution.

Our attention today is directed toward the federal constitutional guarantees.[1] The fifth amendment right to silence and the sixth amendment right to counsel are applicable to the states as elements of due process under the fourteenth amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). These rights, like all constitutional liberties, possess only the life our courts breathe into them. The courts are charged with protecting individual rights against infringement by government authorities. This is seldom a popular task, and never an easy one.

A

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court confronted a potential threat to fifth and sixth amendment values posed by custodial police interrogations. It long had been understood that the government might render ineffective an accused person's right to remain silent at trial, or to have the assistance of counsel, if he were induced to make incriminating pretrial statements which the government later could use against him during the trial. Federal courts often were asked to review the voluntariness of such pretrial statements. During the thirty years immediately preceding *Miranda,* the Supreme Court handed down more than thirty opinions addressing the question of voluntariness in various contexts. *See generally* Kamisar, *A Dissent from the Miranda Dissents: Some*

---

1. Because our focus is upon the federal constitution, we do not invoke independent state

grounds for our decision.

*Comments on the "New" Fifth Amendment and the Old "Voluntariness" Test,* 65 MICH. L.REV. 59, 102 n. 184 (1966). The issues in these cases ranged from contentions of physical coercion to allegations of psychological duress in custodial settings.

During this pre-*Miranda* period, the focus of the sixth amendment cases also was broadened. The right to assistance of counsel at trial had been recognized in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the Supreme Court extended this right to police interrogation following indictment. The Court noted that such interrogation was a critical phase of the criminal justice process. The Court held that no statement obtained during a post-indictment interrogation without an attorney could be used at trial unless the accused person had waived his right to counsel. The Court further extended this right to the pre-indictment phase in *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). In that case the accused, while under arrest and in custody, had been denied access to his lawyer during a police interrogation.

Thus, when *Miranda* was argued in 1966, the Supreme Court's attention had been drawn repeatedly to the importance of early assistance of counsel and to concerns about the voluntariness of statements procured during police interrogations. The stage was set for a major decision, integrating the fifth and sixth amendment rights of accused persons facing interrogation while in police custody.

The Supreme Court's opinion in *Miranda* framed the fifth amendment issue by noting that some compulsion is "inherent in custodial surroundings." 384 U.S. at 458, 86 S.Ct. at 1619. The Court acknowledged the view, advocated in some quarters, that all statements obtained during pretrial custodial interrogations should be barred from use at trial. But the Court eschewed this extreme position. It followed a more moderate course, establishing new procedural safeguards to lessen the compulsive aspects of custodial interrogations. The Court held that the government may not use at trial statements obtained from the accused during a custodial interrogation unless the police have informed him of his right to silence and have afforded him a continuous opportunity to exercise that right. Moreover, to secure the right to silence, the Court enlarged the right to counsel under the sixth amendment by weaving it into the fabric of the fifth amendment. The Court said that "the right to have counsel present at the interrogation is indispensable to the protection of the fifth amendment privilege under the system we delineate today." 384 U.S. at 469, 86 S.Ct. at 1625. The Court included in its new procedural safeguards a requirement that the police inform the accused, at the outset of any interrogation, that he has the right to the presence of an attorney, either retained or appointed.

The Court further held that the accused person could invoke his right to have counsel present, by indicating "in any manner and at any stage of the process" that he desired to consult an attorney. 384 U.S. at 444–45, 86 S.Ct. at 1612–13. In that event, the Court said that "the interrogation must cease.... If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 474–75, 86 S.Ct. at 1627–28.

*Miranda* was both hailed and condemned as a landmark decision. But it actually suffered from a fundamental ambiguity. The opinion did not say precisely whether its procedural requirements—that an accused person be advised of his right to silence and right to counsel, and that the police honor these rights when invoked—created a new per se test for admission into evidence of incriminating pretrial statements, or simply represented additional guidelines for determining the voluntariness of such statements. Advocates of the

per se view pointed to language in the opinion declaring that the government could not use statements at trial obtained from the accused in a pretrial custodial interrogation unless the procedural safeguards had been followed. Opponents of the per se view took comfort in language stating that if an interrogation were continued after the right to counsel had been invoked, the incriminating statements later obtained might still be used at trial if the government sustained its burden of demonstrating that the defendant knowingly and intelligently had waived his right. Echoes of that debate are still audible in the case now before us. To understand the outcome of the debate, we must follow the odyssey of *Miranda* through later Supreme Court decisions.

### B

*Miranda*'s early offspring seemed to discourage the per se view. In *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), the Supreme Court held that statements elicited from a defendant without full compliance with the *Miranda* safeguards could be used to impeach the defendant's credibility if he testified at trial. In *Michigan v. Tucker,* 417 U.S. 433, 94 S.Ct. 2357, 41 L.Ed.2d 182 (1974), the Court held that violation of *Miranda* safeguards would not preclude the prosecution from using a "fruit" of the custodial interrogation—testimony by a witness whose identity had been learned during the interrogation. In both *Harris* and *Tucker,* the Supreme Court characterized the defendants' statements as voluntary, even though obtained during interrogations which did not conform to the *Miranda* safeguards. The Court indicated that these safeguards were not constitutional commands but simply prophylactic measures adopted to secure the right to silence and the related right to counsel. Some observers suggested that these decisions might mark the beginning of the end for *Miranda. E.g.,* Stone, *The Miranda Doctrine in the Burger Court,* 1977 SUP.CT.REV. 99.

Against this backdrop, the Supreme Court decided *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). On its surface, the case appeared to fit the pattern of *Miranda* progeny eating away at their parent. In *Mosley* an accused person in custody told a police officer that he did not wish to discuss certain alleged robberies of a restaurant and a tavern. The officer did not persist in questioning the accused, but returned him to his holding cell. Approximately two hours later, without any intervening consultation with an attorney, the accused was questioned by a different officer about a homicide that had occurred during an attempted robbery at another tavern. Incriminating statements were obtained, and the accused eventually was convicted of the homicide.

The ensuing appeal turned upon the meaning of the *Miranda* requirement that "interrogation must cease" when an accused person has invoked his right to silence. The Supreme Court in *Mosley* said this requirement could not be interpreted literally to mean that the police are forever prohibited to ask an accused person about any crime. Rather, the Court declared that *Miranda* protected the accused's "right to cut off questioning" and that this right must be "scrupulously honored" by the police. *Mosley,* 423 U.S. at 104, 96 S.Ct. at 326. The Court did not specify how long the police must honor this right but said it would be "absurd" to allow interrogation to resume "after a momentary respite." 423 U.S. at 102, 96 S.Ct. at 325. Turning to the facts in *Mosley,* the Court stated that the police had, in fact, "scrupulously honored" the defendant's right to cut off questioning. The Court further determined that the statements made to the second officer had been voluntary. Accordingly, the Court upheld the prosecutor's right to use the statements as evidence at trial.

Although the result in *Mosley* may have found favor with those who opposed the per se view of *Miranda, Mosley*'s analysis actually accorded per se effect to the *Miranda* safeguards. The Court reached the question of whether the defendant's statements were voluntary only after having deter-

mined that the police during the first interrogation had "scrupulously honored" the defendant's "right to cut off questioning." Thus, *Mosley* suggested a two-step standard for admissibility of statements obtained during a custodial interrogation after the accused had invoked his right to silence. Step one was to ascertain whether the suspect's right to cut off questioning had been "scrupulously honored." If not, *Miranda* would bar the use of subsequent statements in evidence at trial. On the other hand, if the suspect's right had been honored, then step two was to inquire whether the subsequent statements had been made voluntarily. *See United States v. Ford,* 563 F.2d 1366 (9th Cir.1977), *cert. denied,* 434 U.S. 1021, 98 S.Ct. 747, 54 L.Ed.2d 769 (1978).

Having signalled in *Mosley* that *Miranda*'s procedural safeguards represented a per se standard of admissibility, in addition to the traditional test of voluntariness, the Court then proceeded to clarify the limits of this per se rule. In *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the Court held that an explicit statement of waiver is not invariably necessary to support a finding that a defendant has waived his right to have counsel present during a custodial interrogation. The Court declined to create, in effect, a secondary per se rule under *Miranda*—that an accused person's waiver of his right to counsel is never effective unless stated explicitly. "[I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." 441 U.S. at 373, 99 S.Ct. at 1757. Thus, although the Court in *Butler* rejected a per se requirement concerning proof of waiver, it did not retract its confirmation in *Mosley* that *Miranda*'s basic safeguards had established a per se rule for admissibility of statements made during custodial interrogations.

In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court returned to the issue of an accused person's "right to cut off questioning," addressing it this time in the context of the right to counsel. Two questions confronted the Court: whether an accused person who had cut off questioning by invoking his right to counsel could be reinterrogated later, and whether the accused's response to such renewed questioning demonstrated a waiver of his previously invoked right. The Court said:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. . . . [A]n accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. 451 U.S. at 484–85, 101 S.Ct. at 1884–85.

The Court held that the statements at issue in *Edwards* had been obtained in violation of the foregoing standards. Accordingly, the Supreme Court reversed a state appellate court decision that had upheld a judgment of conviction.

*Edwards,* like *Mosley,* ascribed per se effect to the *Miranda* safeguards. Moreover, *Edwards* went beyond *Mosley* and adopted a per se corollary to *Miranda*—that a person who has invoked his right to have counsel present during an interrogation may not be reinterrogated until counsel has been furnished or the accused himself reinitiates the dialogue. Thus, *Edwards* seemingly drove the last nail into the coffin of the view that *Miranda*'s procedural safeguards did not represent a per se requirement. One federal appellate court, having steadfastly maintained such a view despite *Mosley,* conceded that *Edwards* had "completely undermine[d]" its position. *White v. Finkbeiner,* 687 F.2d 885, 886 (7th Cir.1982).

Having closed debate on the per se effect of *Miranda,* the Supreme Court briefly—and perhaps inadvertently—opened a question about the per se effect of *Edwards* in *Wyrick v. Fields,* —— U.S. ——, 103 S.Ct. 394, 74 L.Ed.2d 214 (1982). In *Wyrick* an

accused person, having consulted with counsel, agreed to take a polygraph examination. The examination was conducted in counsel's absence. At the conclusion of the examination the accused was asked about a finding that his answers had been deceptive. He voluntarily responded, and made incriminating statements. The Eighth Circuit held the statements inadmissible and adopted a per se rule that the accused was entitled to an extra, meaningfully timed *Miranda* warning before being asked to explain the polygraph result. The Supreme Court reversed, denouncing the Eighth Circuit's new per se rule as illogical. Thus, as in *Butler* but in contrast to *Edwards,* the Court declined to supplement *Miranda* with another per se requirement.

However, some lower courts interpreted *Wyrick*'s emphatic denunciation of the Eighth Circuit's per se rule on polygraphs as a general retraction of any supplemental per se rule, including the *Edwards* corollary. In *State v. Calegar,* 104 Idaho 526, 531 n. 5, 661 P.2d 311, 316 n. 5 (1983), the Idaho Supreme Court said:

> [In *Wyrick*] the Eighth Circuit had interpreted *Edwards* to be a "per se" rule. The United States Supreme Court reversed the Eighth Circuit decision, stating that a "per se" rule "certainly finds no support in *Edwards,* which emphasizes that the totality of circumstances, including the fact that the suspect initiated the questioning, is controlling."

Similarly, in *State v. Culbertson,* 105 Idaho 128, 666 P.2d 1139 (1983), our Supreme Court said, "[*Wyrick*] emphasized that *Edwards* does not state a per se rule but that the totality of the circumstances is controlling." 105 Idaho at 130, 666 P.2d at 1141.

The United States Supreme Court promptly silenced the debate again with its recent decision in *Oregon v. Bradshaw,* —— U.S. ——, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). In that case the Court was asked to decide whether an accused person, who had invoked his right to cut off questioning until he could consult with an attorney, had reinitiated the dialogue within the meaning of *Edwards* by asking a policeman, "Well, what is going to happen to me now?" This issue divided the Court. A plurality of four judges, in an opinion by Justice Rehnquist, held that the accused's question represented a reinitiation of the dialogue, justifying further questioning of the accused by the police. Justice Rehnquist wrote that the accused's question had "evinced a willingness and a desire for a generalized discussion about the investigation." *Id.* at ——, 103 S.Ct. at 2834. Four other justices disagreed. In an opinion by Justice Marshall, they insisted that the question had not been directed toward the subject matter of the criminal investigation, and therefore could not be interpreted as a reinitiation of the dialogue.

Notwithstanding their disagreement on the outcome of this particular issue, all eight justices concurred on the underlying legal test to be applied. They agreed that the admissibility at trial of statements obtained by the police, under circumstances presented in *Bradshaw,* would be determined by a two-fold test: (a) Did the accused himself initiate the contact with the police? (b) If so, did the accused knowingly, intelligently and voluntarily waive his previously asserted right to have counsel present at the interrogation? Justice Rehnquist noted that these two inquiries are separate, "and clarity of application is not gained by melding them together." *Id.* at ——, 103 S.Ct. at 2834.

Only the ninth member of the Court, Justice Powell, disagreed with this two-fold approach. He concurred in the result reached by the Rehnquist opinion, but he did so upon a view that *Edwards* had not established a per se rule governing reinterrogation of an accused who invoked a *Miranda* right. This view attracted no support elsewhere on the Court.

### C

The post-*Miranda* cases have resolved any doubt about the per se effect of *Miranda.* Our post-*Miranda* odyssey has traversed three landmarks. In *Mosley,* the Supreme Court focused upon the right to silence and required law enforcement authorities scru-

pulously to honor an accused person's right to cut off questioning during custodial interrogations. *Mosley* identified two inquiries concerning the admissibility of statements obtained during such an interrogation—whether the police had honored the accused's right to cut off questioning and, if so, whether statements later obtained from the accused had been made voluntarily. In *Edwards,* the Supreme Court focused upon the right to counsel, and again enunciated the accused person's right to cut off questioning. Expanding upon *Mosley,* the Court in *Edwards* created a corollary to *Miranda* —that the police may not reinterrogate a person who has cut off questioning, by invoking his right to counsel, unless the accused himself reinitiates the dialogue with the police. Finally, in *Bradshaw,* eight of nine members of the Court ratified the *Edwards* corollary. The eight justices agreed that the admissibility of statements, made after questioning has been cut off, turns not merely upon whether the accused knowingly, intelligently and voluntarily waived a previously asserted *Miranda* right, but also upon the question of whether the accused reinitiated the contact with the police.

■ Thus, it has become clear not only that *Miranda*'s procedural safeguards represent a per se requirement for admissibility of evidence at trial, but that where the right to counsel is concerned the per se requirement embraces two tests. Under *Miranda* itself, the first test is whether the police, at the outset of a custodial interrogation, have informed the accused person of his right to have an attorney present and have scrupulously honored this right if invoked by the accused. The second test arises when an accused has cut off questioning, by invoking his right to an attorney, but thereafter makes incriminating statements prior to consulting with counsel. In that situation, the test established by the *Edwards* corollary is whether the accused himself has reinitiated contact with the authorities about the investigation. These per se tests must be satisfied, in addition to the underlying requirement that any statement obtained be voluntary, in order for an incriminating statement to be used against the accused person as part of the prosecution's case at trial.

## II

■ We next consider how these threshold per se tests should be applied where the accused person makes an equivocal request for the assistance of counsel during his custodial interrogation. This question has not been addressed by a previously reported Idaho decision, but has been considered by several other state and federal appellate courts. Two schools of thought can be discerned.

The first school is grounded upon the declaration in *Miranda* that the right to counsel may be invoked "in any manner." 384 U.S. at 444, 86 S.Ct. at 1612. Interpreting this language literally, a few courts have adopted a bright line rule that any mention of an attorney, however ambiguous or unclear, halts the interrogation and prevents the police from asking further questions until counsel is provided. *E.g., People v. Zolnay,* 15 Cal.3d 729, 125 Cal.Rptr. 798, 542 P.2d 1390 (1975); *Singleton v. State,* 344 So.2d 911 (Fla.Dist.Ct.App.1977); *State v. Ayers,* 16 Or.App. 300, 518 P.2d 190 (1974). These cases precede *Edwards* and *Bradshaw.* Presumably, the same courts today would not preclude resumption of an interrogation if the accused himself reinitiates the dialogue with the police. But this does not change the bright line drawn by those courts for initially halting the interrogation.

Other courts have drawn an equally bright, but more pragmatic, line to designate the appropriate police response to an equivocal request for counsel. This alternative approach is based upon *Edwards,* where the Court "emphasize[d] that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has *clearly asserted* his right to counsel." (Emphasis supplied.) 451 U.S. at 485, 101 S.Ct. at 1885. On the surface, this language would seem to leave no room for honoring an equivocal request for counsel.

However, the Court softened the point, and inserted an element of flexibility, by adding a footnote:

> The rule in the Fifth Circuit is that a knowing and intelligent waiver cannot be found once the fifth amendment right to counsel has been clearly invoked unless the accused initiates the renewed contact. [Citations omitted.] Waiver is possible, however, when the request for counsel is equivocal. *Nash v. Estelle,* 597 F.2d 513 (CA 5 1979) (en banc). *See Thompson v. Wainwright,* 601 F.2d 768 (CA 5 1979). [451 U.S. at 486 n. 9, 101 S.Ct. at 1885 n. 9.]

In the *Nash* case, cited by the Supreme Court, the Fifth Circuit said:

> When ... a desire for immediate talk clearly appears from the suspect's words and conduct, but he also states he wants a lawyer (i.e., "I would like to have a lawyer, but I would rather talk to you"), it is sound and fully constitutional police practice to clarify the course the suspect elects to choose. [597 F.2d at 517.]

The Fifth Circuit elaborated its view in the *Thompson* case, also cited by the Supreme Court:

> [W]henever even an equivocal request for an attorney is made by a suspect during custodial interrogation, the scope of that interrogation is immediately narrowed to one subject and one only. *Further questioning thereafter must be limited to clarifying that request* until it *is* clarified. When and if it is clarified as a present desire for the assistance of legal counsel, *all* interrogation must cease until that is provided, just as in the case of an initial, unambiguous request for an attorney. And no statement taken after that request is made and before it is clarified as an effective waiver of the present assistance of counsel can clear the *Miranda* bar.... [W]e avoid attributing a talismanic quality to the word "attorney" falling from a suspect's lips, while at the same time safeguarding his right to the assistance of counsel when he wants it and says so. [601 F.2d at 771-72. Emphasis original.]

The rule enunciated by the Fifth Circuit, that an equivocal request for counsel does not terminate all questioning by the police, but immediately narrows the focus to clarifying the nature of this request, has been adopted in other jurisdictions. *E.g., United States v. Riggs,* 537 F.2d 1219 (4th Cir. 1976); *United States v. Prestigiacomo,* 504 F.Supp. 681 (E.D.N.Y.1981); *Daniel v. State,* 644 P.2d 172 (Wyo.1982).

We prefer the Fifth Circuit's pragmatic approach to a rigid rule that would bar all further questioning of the accused. The pragmatic approach occupies a sensible middle ground between, on one hand, giving "talismanic effect" to any vague mention of an attorney and, on the other hand, insisting that accused persons in custody invoke their rights in language free from all possible ambiguity. This approach protects the accused person without unduly interfering with reasonable police questioning.

Therefore, we hold that when an accused person is undergoing a custodial police interrogation and makes an equivocal request for counsel, questioning on the subject matter of the investigation must be suspended. Further questioning must be limited to clarifying the request. If the accused, without persuasion or inducement by the police, indicates that he does not want counsel present at that time, the interrogation may resume. Otherwise, the interrogation must be discontinued until counsel has been provided, or the accused himself reinitiates a dialogue with the police about the investigation.

### B

■ We now apply this holding to the instant case. Moulds, a prison inmate, was interviewed at the prison by police detectives concerning crimes with which he is now charged. It appears, and the State of Idaho apparently concedes, that the interview was a custodial interrogation within the sense of *Miranda. Cf. Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) (rejecting an argument that *Miranda* applies only to questioning of a per-

son whose custody is connected with the very case under investigation).

The district court found that the detectives had informed Moulds of his *Miranda* rights and had given him a waiver form explaining those rights. Moulds placed his initials next to each statement of rights on the form; but he hesitated when asked to initial a statement that he was willing to talk to the police. He asked for more information concerning the crimes being investigated. A detective said he knew where Moulds had lived, when he was not in prison, and that Moulds had been involved in a particular robbery. However, the detective refused to give Moulds more information. Moulds indicated that he would talk to the detectives. He initialed the rest of the form, including a statement that he waived his rights, and he signed the form at the bottom. At this point it is clear that Moulds had made an incipient waiver of his rights. However, the right to silence or to have an attorney present still could be invoked "at any stage of the process." *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1612–13.

Moulds then repeated his request for more information about the crimes under investigation. While a detective was giving Moulds this information, Moulds interrupted him and said, "Maybe I need an attorney," or "I think I need an attorney." One of the detectives responded that Moulds did have the right to an attorney, but that the decision was his to make. The detective then proceeded, in the district court's words, "to tell [Moulds] about their case and how he could make a written statement without mentioning the name of an accomplice." After listening to these additional remarks by the detective, Moulds made statements tending to incriminate him with respect to several alleged crimes.[2]

The district judge, in ruling that the statements must be suppressed, deemed the equivocal request for counsel sufficient, of itself, to invoke the right to counsel. This view is inconsistent with the Fifth Circuit approach we have adopted today, but we find no error in the result. When Moulds mentioned an attorney, it would have been permissible and appropriate for the detectives to narrow their inquiries to determining whether he did, or did not, then want an attorney present. However, the detectives did not do so. They left the request unclarified and continued their discussion about the investigation. Therefore, we are constrained to treat Moulds' reference to an attorney as an invocation of his right to counsel.

### III

█ The next, and final, issue is whether communication by the detective to Moulds, after the right to counsel had been invoked, represented further "interrogation" within the proscription of *Miranda* and *Edwards.* The State of Idaho contends that the communication did not constitute interrogation because it did not contain any remarks phrased as questions. The United States Supreme Court has answered this contention. In *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Court stated:

> [T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. [446 U.S. at 300–01, 100 S.Ct. at 1689–90.]

The Supreme Court elaborated this point in a footnote, stating that "interrogation" is not limited to police statements punctuated

---

2. Moulds eventually was charged with numerous offenses, including those mentioned in the statements obtained at the prison. However, it does not appear that Moulds' statements were the sole grounds for prosecution. The State's response to a pretrial discovery request listed more than sixty documents and more than eighty potential witnesses. The State's right to use such other evidence at trial is not controverted in this appeal.

by a question mark. 446 U.S. at 301 n. 6, 100 S.Ct. at 1690 n. 6. Thus, the issue is not whether the detectives asked questions after the right to counsel had been invoked, but whether they uttered words or engaged in actions which they knew or should have known were "reasonably likely to elicit an incriminating response."

The district court conducted an evidentiary hearing before ruling on the suppression motion. The court heard testimony from the detectives and from Moulds concerning the interrogation. One of the detectives described the objective of the interview as "aiding our investigation. That was going to clear our case file." In his memorandum decision, the district judge cited *Innis* and focused upon the detectives' purpose for talking to Moulds after the right to counsel had been invoked:

> One could reason that officers, once knowing a defendant was going to see counsel, would want that defendant to know all they had as evidence against him so he could inform his lawyer when the defendant contacted the lawyer. Defense counsel, always skeptical with ample justification, sees the officers as practicing a subtle confession acquisition technique similar to those techniques exposed in *Miranda,* as coming from police manuals. Certainly, officers interview suspects with high hopes of obtaining confessions and admissions from defendants and officers know that if that defendant ever gets the advice of counsel and follows that advice, the confession hoped for is lost.
>
> Thus, it would be more reasonable to conclude that continued conversation about the crimes by police in the case at bar was in reality subtle interrogation designed to elicit incriminating information from the defendant.

The district judge implicitly found that the continuing communication with Moulds was intended, and reasonably likely, to invoke an incriminating response.

The appropriate standard, for appellate review of a determination that police words or conduct constitute interrogation, has not been defined in Idaho. In cases where the voluntariness of an incriminating statement is at issue, the United States Supreme Court has held that proper appellate review requires an independent evaluation of the record. *Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). However, the issue of voluntariness is not before us in this case. Moreover, the voluntariness of a statement is an ultimate issue, impinging directly upon a fundamental right. In contrast, whether certain words or conduct represent "interrogation" is a narrower, essentially factual question.

In general, factual determinations by a trial judge will not be set aside on appeal unless they are clearly erroneous. *See, e.g., State v. Campbell,* 104 Idaho 705, 711, 662 P.2d 1149, 1155 (1983); *cf.* I.R.C.P. 52(a) (prescribing the same standard for review of trial court findings in civil cases). The Ninth Circuit has employed the general standard of clear error to review a determination of whether police conduct subsequent to arrest constitutes "interrogation." *United States v. Booth,* 669 F.2d 1231, 1238 (9th Cir.1981). That Court also has observed:

> On this crucial factual determination which must be made in light of all the circumstances in the case ... we will not lightly substitute our judgment for that of the district judge, who can better evaluate the facts and the often conflicting inferences that may be drawn therefrom.

*United States v. Thierman,* 678 F.2d 1331, 1334 (9th Cir.1982). We agree with the Ninth Circuit and adopt the standard of clear error in the present case.

A finding will not be deemed "clearly erroneous" unless, after reviewing the entire evidence, the appellate court is left with the definite and firm conviction that a mistake has been committed. *United States v. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The instant case leaves us with no such firm conviction. Rather, the question whether the words directed at Moulds represented "interrogation" is a close one. It was carefully weighed by the district judge. In our

view, his determination, that "interrogation" occurred within the meaning of *Innis,* was not clearly erroneous. It will not be disturbed.

We conclude that the per se tests of *Miranda* and *Edwards* have not been satisfied. Moulds' statements were the products of interrogation continued at the instance of the police after the right to counsel had been invoked. Therefore, the statements must be suppressed. Of course, as we have noted earlier, this suppression does not preclude the prosecution from using the statements for impeachment, should Moulds elect to testify at trial. *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

The order of the district court is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.