The **PEOPLE** of the State of Colorado,
Plaintiff-Appellee,

v.

**Kelly Arthur JOHNSON,**
**Defendant-Appellant.**

**No. 84CA0297.**

Colorado Court of Appeals,
Div. III.

June 6, 1985.

Rehearing Denied July 11, 1985.

Certiorari Denied (People) Jan. 21, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Peter J. Stapp, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Judy Fried, Deputy State Public Defender, Denver, for defendant-appellant.

BABCOCK, Judge.

Defendant, Kelly A. Johnson, appeals the judgment of conviction entered upon a jury verdict finding him guilty of second degree forgery. He contends that the trial court erred in denying his motion to suppress a written statement made to the police on the day after his arrest because it was obtained in violation of his Sixth Amendment right to counsel. We agree, and reverse.

Defendant was arrested at approximately 8:30 p.m. on August 23, 1983, by Denver Police officers Palermo and Tanberg after he had attempted to cash a check at the Money Express Check Cashing Company in Denver. The check was drawn on the account of Buckhorn Associates and was made out to defendant in the amount of $479.04. Defendant was an employee of the Buckhorn Exchange Restaurant, but the check was not signed or authorized by Buckhorn Associates.

At the Denver police station, Palermo read defendant his Miranda rights from a written form and asked defendant to sign the section acknowledging only that he had been advised of his rights and understood them. At the suppression hearing the officer testified that he did not ask defendant to sign the waiver section of the form because he did not intend to question defendant.

After booking, defendant was transferred to the custody of a Denver deputy sheriff, who assisted defendant in filling out a bond investigation questionnaire. He testified that he recalled nothing about his conversation with defendant on the night defendant was arrested. Defendant's un-contradicted testimony was that: "It was at that time that I asked him if I could speak to an attorney, and he said, yes. Well, I indicated taht I would need the public defender, and he told me that the public defender would be in contact with me. He said probably not that night, but he said undoubtedly sometime during the next day."

At 10:30 p.m., defendant signed a form entitled "Request for Determination of Indigency," a prerequisite for obtaining the service of a public defender. The request was witnessed and signed by a deputy sheriff and was also signed by an interviewer from the Public Defender's office.

A shift supervisor with the sheriff's department testified that, in practice, a copy of the Request for Determination of Indigency accompanies the prisoner to the floor where his cell is located. The following morning the request is given to the public defender. He also testified that, as a matter of practice, before the Request for Determination of Indigency is filled out by a deputy sheriff, "We ask them if they have their own attorney or if they wish to see a Public Defender."

At 7:30 the next morning before the public defender had an opportunity to speak with defendant, either in person or by phone, Detective Theide of the Denver Police Department took defendant from his cell to an interrogation room where he advised him of his Miranda rights. Defendant signed the advisement form, once to signify that he understood his rights, and a second time to signify that he wished to waive them. Defendant then made the incriminating statement to the detective which was introduced at trial over defendant's objection. Defendant did not in any way initiate contact or communication with the detective.

Defendant argues that the interrogation initiated by the detective after he had invoked his right to counsel violated his Sixth Amendment right to counsel and, thus, his statement should have been suppressed by the trial court. We agree.

▮ Once the accused has requested counsel, all questioning must cease until the defendant is given a reasonable opportunity to talk with an attorney. *People v. Traubert,* 199 Colo. 322, 608 P.2d 342 (1980). A request for counsel need not be sophisticated or in a legally proper form. *People v. Fish,* 660 P.2d 505 (Colo.1983); *see People v. Harris,* 191 Colo. 234, 552 P.2d 10 (1976).

▮ The trial court here found that defendant did not request an attorney. Although we may not overturn the findings of the trial court when supported by the record, factual findings must be set aside when they are so clearly erroneous as not to find support in the record. *People v. Johnson,* 653 P.2d 737 (Colo.1982).

▮ Here, the record does not support the trial court's finding that defendant failed to request an attorney. Defendant's testimony that he requested an attorney at the time that he was booked into the Denver city jail was uncontroverted. We are also aided by the uncontroverted fact that defendant signed the indigency request form which ordinarily would culminate in his being represented by a public defender. In addition, the trial court based its finding on defendant's post-request responses to *further* police interrogation. Only the circumstances leading up to defendant's request may be considered. An accused's post-request responses to further interrogation may not be used to cast doubt on the clarity of his initial request for counsel. *Smith v. Illinois,* 469 U.S. ——, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Therefore, we conclude as a matter of law that defendant effectively requested an attorney.

Failure to provide defendant with a public defender or private attorney before initiating further contact or communication with defendant was a violation of the standard stated in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards,* it was held that once an accused has expressed his desire to deal with the police only through counsel, he must not be subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. Hence, defendant's subsequent statement here was obtained in violation of his constitutional right to counsel and should have been suppressed at trial. *People v. Richards,* 194 Colo. 83, 568 P.2d 1173 (1977).

There remains the question whether introduction of the statement at trial was harmless error. We hold that it was not.

▮ In order for an error involving the denial of a federal constitutional right to be held harmless in a state criminal case, the reviewing court must be satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Germany v. People,* 198 Colo. 337, 599 P.2d 904 (1979). Applying this standard to the circumstances here, we conclude that the error in this case was not harmless to defendant.

▮ The prosecution was required to prove defendant knew that the check he attempted to cash was forged. Defendant's statement to the detective was the only direct evidence admitted on this issue. Thus, we are not satisfied beyond a reasonable doubt that the introduction of defendant's incriminating statement did not contribute to his conviction.

The judgment of conviction is reversed and the cause is remanded for a new trial.

VAN CISE and TURSI, JJ., concur.