The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Bryant Maurice BENJAMIN, Defendant-Appellee.

No. 86SA146.

Supreme Court of Colorado.

Feb. 17, 1987.

---

Norman S. Early, Jr., Dist. Atty., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Harvey A. Holtzman, Deputy State Public Defender, Denver, for defendant-appellee.

KIRSHBAUM, Justice.

The People have filed this interlocutory appeal pursuant to C.A.R. 4.1 challenging the district court's order suppressing statements made by the defendant, Bryant Maurice Benjamin, to a Denver Police Department detective on September 4, 1985. Relying on its interpretation of the case of *People v. Johnson*, 712 P.2d 1048 (Colo. App.1985), the district court concluded that although the statements were voluntary and the defendant had waived his right to counsel, the statements were inadmissible because they resulted from custodial interrogation initiated by the police after the defendant impliedly had invoked his right to counsel. We reverse.

On August 31, 1985, while in custody, the defendant signed a form entitled "Request for Determination of Indigency."[1] The form stated as follows:

> Sign below if you want to provide information to a representative of the Public Defender[']s office for an initial determination of indigency.[2]

On September 1, 1985, an investigator from the Denver office of the Public Defender interviewed the defendant and affixed his signature to the same form.[3] The public defender was appointed to represent the defendant at the initial arraignment in this case on October 21, 1985.

---

1. The evidence in the record with regard to the events that occurred prior to September 4, 1985, is limited to a stipulation of the parties that (1) the request for determination of indigency form was signed by the defendant on August 31, 1985, at 9:10 a.m., and (2) the defendant was interviewed by an investigator from the Public Defender's Office on September 1, 1985, at 7:00 a.m. Neither the defendant nor the investigator testified at the suppression hearing.

2. The defendant states in his brief that he had been arrested for investigation of burglary. The record on appeal does not indicate the reason or the circumstances surrounding the execution of the form in question, nor does the record indicate whether the form was signed in connection with the case now on appeal.

3. The defendant argues in his brief that a determination of indigency was made on September 1. The record does not establish when the trial court actually made such a determination.

On September 4, 1985, Denver Police Department Detective Mark Cossitt initiated a conversation with the defendant at the Denver Police Department Detention Center. The officer had no knowledge that the defendant had signed a request for determination of indigency form four days earlier or that the defendant had been interviewed by an investigator from the public defender's office. He advised the defendant of his rights pursuant to the decision of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), including the right to remain silent and the right to be represented by counsel at all stages of the proceeding. The detective next asked the defendant if he understood those rights and, if so, whether he nevertheless would be willing to talk about the matters under investigation. The defendant signed a written form stating that he understood his rights to remain silent, to have an attorney appointed and to have an attorney present during questioning and that he waived those rights voluntarily. He then made the statements that he later sought to suppress.

At the suppression hearing the trial court found that on September 4, 1985, the defendant effectively waived his right to counsel and that the statements he made to Detective Cossitt were made voluntarily. The defendant does not dispute either of these findings. With regard to the signing of the request for determination of indigency form and the interview with the investigator, the trial court stated as follows:

> [T]he only logical inference I can find therefrom is that this was the first step toward the institution and appointment of an attorney on behalf of the defendant at state expense. I find that while this may not be an express request for appointment of an attorney, it's certainly an implied request for the appointment of an attorney and an implied request that an attorney be present for all further proceedings and represent the defendant.

We conclude that the record does not support the trial court's finding that for purposes of fifth amendment protections the defendant's conduct on August 31 and September 1 constituted a request for representation by an attorney that prohibited all subsequent communication initiated by the police.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court examined the scope of the protection against self-incrimination embodied in the fifth amendment to the United States Constitution and enumerated procedural safeguards that have since served as benchmarks for assessing whether statements made by an accused during custodial interrogation conducted by police authorities may be admitted into evidence during subsequent judicial proceedings. The Court held that the amendment itself requires police officials, prior to any custodial interrogation of an accused, to advise that person that he or she has a right to remain silent; that any statements made may be used as evidence against the accused; that the accused has a right to consult with an attorney prior to police interrogation and to have an attorney present during any interrogation; and that if the accused cannot afford to retain an attorney, an attorney will be furnished without cost. *See also Michigan v. Jackson,* —— U.S. ——, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

■ The Supreme Court also indicated in *Miranda* that once an accused does request representation by counsel, all police-initiated interrogation must cease until the accused has consulted with an attorney. *Miranda,* 384 U.S. at 474, 86 S.Ct. at 1627. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, the Supreme Court elaborated on this latter point as follows:

> [A]n accused, ... *having expressed his desire to deal with the police only through counsel,* is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates fur-

ther communication, exchanges or conversations with the police.

*Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85 (emphasis added). *Accord Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984); *People v. Pierson,* 670 P.2d 770 (Colo.1983). The "bright line" test of *Edwards* requires all police interrogation concerning any aspect of the accused's connection to suspected criminal activities to cease upon an expression by the accused of a desire for representation by counsel. It does not, however, require all police communication with the accused to cease immediately in all circumstances. For example, if the accused's statements concerning the right to counsel are ambiguous, police officials are not prohibited from asking the accused to clarify whether he or she in fact desires to be represented by counsel. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378; *Nash v. Estelle,* 597 F.2d 513 (5th Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); *People v. Roark,* 643 P.2d 756 (Colo.1982). It would be anomalous to require officers to initiate discussions with a suspect in order to advise that suspect of constitutional rights but prohibit the officers from determining whether the suspect desires to exercise those rights when responses to the advisement are ambiguous or equivocal. Some flexibility is necessary in these circumstances to ensure that interrogating officers neither persist in questioning a suspect when the suspect does not want to communicate in the absence of an attorney nor forego the opportunity to question a suspect who wishes to waive the privilege of having an attorney present during police interrogation.

When a defendant seeks to suppress statements on the basis that government officials improperly ignored a request for counsel, two inquiries are required: first, whether an accused "actually invoked his right to counsel," and second, if so, whether that request was scrupulously honored. *Smith v. Illinois,* 469 U.S. at 95, 105 S.Ct. at 493. This appeal focuses primarily on the first of these inquiries.

The United States Supreme Court has not been consistent in articulating the standard by which this initial inquiry is to be guided. In *Edwards,* for example, the court indicated that the question was whether the defendant "expressed his desire" for counsel or "clearly asserted" his right to counsel. *Edwards v. Arizona,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85. *Miranda* itself articulated the standard variously as whether the accused "states that he wants an attorney," *Miranda v. Arizona,* 384 U.S. at 474, 86 S.Ct. at 1627, and whether the accused "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking...." *Id.* at 444–45, 86 S.Ct. at 1612.

Whatever the standard might be, it is apparent that "[o]n occasion, an accused's asserted request for counsel may be ambiguous or equivocal." *Smith v. Illinois,* 469 U.S. at 95, 101 S.Ct. at 493. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378; *Nash v. Estelle,* 597 F.2d 513 (5th Cir.), *cert. denied,* 444 U.S. 981, 100 S.Ct. 485, 62 L.Ed.2d 409 (1979); *People v. Roark,* 643 P.2d 756, 775–76 (Rovira, J., delivering majority opinion on *Miranda* issue); *see also Vail v. State,* 599 P.2d 1371 (Alaska 1979); *Lamb v. Commonwealth,* 217 Va. 307, 227 S.E.2d 737 (1976). Recognizing that fifth amendment protections may be waived and that police officials have a legitimate interest in obtaining clarification of an ambiguous response to advisements of these rights, courts have developed various means of dealing with this situation. *Smith v. Illinois,* 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3.[4] The decisions in

---

**4.** In *Smith v. Illinois,* 469 U.S. at 96 n. 3, 105 S.Ct. at 493 n. 3, the majority states as follows:

Some courts have held that all questioning must cease upon any request for or reference to counsel, however equivocal or ambiguous. See, *e.g., People v. Superior Court,* 15 Cal. 3d 729, 735–736, 125 Cal.Rptr. 798, 802–803, 542 P.2d 1390, 1394–1395 (1975), cert. denied, 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976); *Ochoa v. State,* 573 S.W.2d 796, 800–801 (Tex. Crim.App.1978). Others have attempted to define a threshold standard of clarity for such

*Thompson v. Wainwright*, 601 F.2d 768 (5th Cir.1979), and *State v. Moulds*, 105 Idaho 880, 673 P.2d 1074 (App.1983), hold basically that when an accused makes an ambiguous statement that might reasonably be construed as a request for counsel, interrogation must cease immediately except for very limited questions designed to clarify the ambiguous statement or to clarify the accused's wishes regarding the presence of counsel. This approach strikes an appropriate balance between the interests of the defendant and those of the prosecution. It recognizes the difficulty posed by a statement that may indicate a desire for counsel but may also indicate a desire to discuss the matter without benefit of counsel and in spite of the consequences thereof. It emphasizes that if the accused in fact desires to speak with an attorney, the full protections of the fifth amendment must be implemented. However, it also recognizes that the *Edwards* "bright line" test need not prohibit all subsequent police questioning when a reasonable inference can be drawn from the conduct or statements of the accused that the accused does not wish to be represented by an attorney prior to discussing the matters under investigation.

In this case the trial court found that the defendant did not expressly request the appointment of counsel to represent him on August 31 or on September 1. The trial court then found that the defendant's interest in determining whether he was eligible for legal assistance without cost constituted an implied request for the assistance of counsel. We conclude that the evidence submitted at the suppression hearing does not support the trial court's finding that the defendant's conduct on August 31 and September 1 must be deemed equivalent to a request for counsel on those dates.

The record does not indicate what the defendant said on either August 31 or September 1, or what he was told by any official or the investigator on those dates. There is, therefore, no evidence suggesting that on September 1 the defendant informed the investigator of a desire to be represented by counsel. While the defendant's conduct can support an inference that he wished to have counsel appointed to represent him before discussing the case, it certainly does not require such an inference. An equally logical inference from those acts is that the defendant was considering his options and simply desired to know whether, if he chose to be represented by an attorney, he would be able to have such representation without cost to himself. This type of conduct, giving rise to opposing inferences, is precisely the type of ambiguous communication that permits police-initiated inquiries limited to a clarification of the actor's wishes. Under these circumstances, questions directed by police officials to the defendant on either of those dates seeking clarification of whether the act of signing the request for determination of indigency form in fact signified a wish to be represented by an attorney would not have violated fifth amendment prohibitions.

There is undisputed evidence that on September 4, 1985, the defendant did not wish to be represented by an attorney before speaking to Detective Cossitt. In view of all of the circumstances disclosed by the record, we conclude that the defendant's

requests, and have held that requests falling below this threshold do not trigger the right to counsel. See, *e.g. People v. Krueger*, 82 Ill.2d 305, 311, 45 Ill.Dec. 186, 189, 412 N.E.2d 537, 540 (1980) ("[A]n assertion of the right to counsel need not be explicit, unequivocal, or made with unmistakable clarity," but not "every reference to an attorney, no matter how vague, indecisive or ambiguous, should constitute an invocation of the right to counsel"), cert. denied, 451 U.S. 1019, 101 S.Ct.

3009, 69 L.Ed.2d 390 (1981). Still others have adopted a third approach, holding that when an accused makes an equivocal statement that "arguably" can be construed as a request for counsel, all interrogation must immediately cease except for narrow questions designed to "clarify" the earlier statement and the accused's desires respecting counsel. See, *e.g., Thompson v. Wainwright*, 601 F.2d 768, 771–772 (CA5 1979); *State v. Moulds*, 105 Idaho 880, 888, 673 P.2d 1074, 1082 (App.1983).

conduct prior to September 4, 1985, cannot be deemed so unambiguous a request to be represented by counsel as to prohibit subsequent police-initiated inquiry about the defendant's wishes concerning his fifth amendment privilege against self-incrimination. Detective Cossitt's readvisement was designed to ascertain the defendant's wishes with respect to consultation with an attorney—a permissible area for discussion in view of the defendant's earlier ambiguous conduct.

In the case of *People v. Johnson,* 712 P.2d 1048 (Colo.App.1985), which was deemed dispositive by the trial court, undisputed testimony by the accused established that he had expressly made a request for representation by counsel to a Denver deputy sheriff prior to signing a request for determination of indigency form. It was the clear and unequivocal request for representation, not the signing of a determination of indigency form, that insulated the defendant from any further interrogation initiated by police officials until counsel had been obtained. That case does not control the circumstances presented here.

We conclude that under the circumstances disclosed by the record in this case the defendant's execution of the request for determination of indigency form and the fact that he was interviewed by an investigator employed by the Office of the Public Defender did not constitute an unambiguous invocation of his right to counsel. We further conclude that his subsequent voluntary waiver of his right to consult with counsel prior to any police interrogation was not obtained by impermissible police conduct and was made voluntarily and with full knowledge of his constitutionally protected rights. His subsequent statements having been uttered after the knowing and voluntary relinquishment of a known inalienable right, *see North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the trial court erred in ordering their suppression on fifth amendment grounds.

For the foregoing reasons, the trial court's order is reversed and the case is remanded for further proceedings.

DUBOFSKY, J., does not participate.