**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**James Raphael HULSING, Defendant–Appellant.**

No. 90CA0277.

Colorado Court of Appeals, Div. V.

July 18, 1991.

Rehearing Denied Aug. 29, 1991.

Certiorari Denied March 10, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Denver, for plaintiff-appellee.

Schoenwald & Lewis, P.C., Forrest W. Lewis, Denver, for defendant-appellant.

Opinion by Judge JONES.

Defendant, James Raphael Hulsing, appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree murder. We affirm.

## I.

Defendant first contends that the trial court erred in denying his motion to suppress statements he made to a police detective subsequent to his arrest.

At the hearing on defendant's motion to suppress, the trial court heard conflicting evidence as to whether defendant had requested an attorney before speaking with police.

Defendant claimed that during the early morning hours of January 1, 1989, he twice told the police detective that he "really needed" or had "better talk to" a lawyer. However, the detective gave a different version of the events of that morning. He claimed that he spoke with defendant only once and that defendant was extremely agitated and emotionally distraught. The detective testified that defendant stated: "I don't know if I need a lawyer or not."

Based upon this evidence, the trial court found that defendant had made only an ambiguous request for counsel. We conclude that the trial court's finding is supported by competent evidence in the record and is, therefore, binding on appeal. *See People v. Horn,* 790 P.2d 816 (Colo.1990).

Once an accused requests representation by counsel, all police-initiated interrogation must cease until the accused has consulted with an attorney. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). And, an accused who has expressed his desire to deal with the police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

However, on occasion, an accused's asserted request for counsel may be ambiguous or equivocal. *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Under such circumstances, interrogation must cease immediately except for very limited questions designed to clarify the ambiguous statement or to clarify the accused's wishes regarding the presence of counsel. *People v. Benjamin,* 732 P.2d 1167 (Colo.1987); *see Thompson v. Wainwright,* 601 F.2d 768 (5th Cir.1979); *State v. Moulds,* 105 Idaho 880, 673 P.2d 1074 (Idaho Ct.App.1983).

Here, after defendant's ambiguous request to speak with an attorney, the police detective terminated the interview. The next contact between the two occurred the following day at which time defendant was again advised of his rights, including his right to consult with an attorney. Defendant acknowledged that he understood his rights and then chose to waive those rights by signing the waiver portion of the advisement form.

Prior to interviewing defendant, the detective explained to defendant that he could invoke his right to silence or his right to an attorney at any time and that he could stop

the questioning at any time. And, during the course of the subsequent interview, defendant did not refuse to answer questions or otherwise indicate he wanted an attorney present.

Defendant argues that, even in the absence of any police pressure, a mere readvisement of *Miranda* rights, such as occurred here, is not sufficiently narrow or probative so as to satisfy the rule in *Benjamin* permitting only limited questions designed to clarify the ambiguous statement. This argument lacks merit, however, most notably because *Benjamin* also involved a simple readvisement.

In *Benjamin*, a defendant signed a form which entitled him to provide information to a representative of the public defender's office for an initial determination of indigence. Subsequently, a detective readvised the defendant of his *Miranda* rights. The defendant chose to waive his rights and then made an incriminating statement which he later sought to suppress.

The trial court found that defendant's interest in determining whether he was eligible for free legal assistance constituted an implied request for the assistance of counsel. The supreme court disagreed and characterized defendant's action as an "ambiguous communication that permits police-initiated inquiries limited to a clarification of the actor's wishes." Notably, the court then concluded that the police detective's "readvisement was designed to ascertain the defendant's wishes with respect to consultation with an attorney—a permissible area for discussion in view of the defendant's earlier ambiguous conduct."

We hold, in light of *Miranda, Edwards, Smith, Benjamin,* and other cases, that if an incarcerated suspect has communicated in equivocal and ambiguous language concerning a desire to have an attorney present at any interrogation, thereby giving rise to permitted police-initiated inquiries limited to a clarification of the suspect's wishes, and if the circumstances reveal no coercion, accusatory language, or unfair inducement relative thereto, then a permissible procedure for establishing such limited clarification is to readvise the suspect utilizing the *Miranda* warnings.

We conclude that here, as in the *Benjamin* case, the detective's readvisement was sufficient to clarify the ambiguity concerning defendant's request to speak with an attorney. We further conclude that defendant's subsequent waiver of his rights, and the statements made thereafter, were voluntary and not the result of impermissible police conduct. Accordingly, the trial court did not err in denying defendant's motion to suppress the statements.

## II.

Defendant next contends that the trial court abused its discretion in admitting certain testimony regarding his prior threats against and arguments with the victim. Again, we disagree.

## A.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. CRE 404(b); *see People v. Lamirato,* 180 Colo. 250, 504 P.2d 661 (1972).

In homicide cases involving marital partners, any fact or circumstance relating to ill-feeling, ill-treatment, jealousy, prior assaults, personal violence, threats, or any similar conduct or attitude by one spouse against the other is relevant to show motive and malice in such crimes. *Romero v. People,* 170 Colo. 234, 460 P.2d 784 (1969); *see also People v. Gladney,* 194 Colo. 68, 570 P.2d 231 (1977) (evidence of prior acts of violence toward the victim is admissible in a murder prosecution to show motive, malice, or ill will between the victim and the defendant). Thus, initially we note that the evidence was relevant and, therefore, admissible. CRE 402.

## B.

Defendant, nevertheless, asserts that, even if the subject evidence was relevant, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice and, thus, was required to be excluded pursuant to CRE 403.

■ Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action. *People v. Ojeda*, 745 P.2d 274 (Colo.App.1987). A trial court has broad discretion to determine both the relevancy of evidence and its relative probative value and prejudicial effect. *People v. Huckleberry*, 768 P.2d 1235 (Colo.1989).

Here, the evidence demonstrated the existence of a destructive and deteriorating relationship between the victim and defendant. While we note that there was some potential for prejudice to defendant by the admission of such evidence, that potential was outweighed by its probative value, and we conclude that the trial court did not abuse its discretion in admitting the evidence. *See People v. Lowe*, 660 P.2d 1261 (Colo.1983).

## C.

Defendant further asserts that the evidence should also have been excluded as hearsay. The trial court, however, admitted the testimony under CRE 803(2), the "excited utterance" exception to the hearsay rule. We agree with the trial court ruling.

The first segment of disputed testimony came from a friend of the victim who testified that in the winter of 1981–82, the victim phoned him within minutes after having been beaten and asked him to come pick her up. Upon his arrival 15 minutes later, the victim was waiting at her doorway and then entered the witness' car. The victim then told him that her husband (the defendant) was drunk, had "thrown her around," and said he was going to kill her. The witness further testified that the victim stated she was "scared for her life."

When asked to describe the victim's condition at the time she made the statements, the witness noted that: "[S]he was crying. Her voice was very broken ... [and she was] in a turmoil...."

The second portion of disputed testimony came from a neighbor of the victim who testified that, on two separate occasions, the victim came to her house within minutes after defendant had allegedly threatened her and/or her children with a gun. In describing the victim's emotional state on the occasion of the first incident, the neighbor stated that "she was very nervous" and that she "kept telling [one of the children] not to go near the window."

Regarding the victim's state of mind during the second occasion, the witness did state that "she seemed ... almost too calm...." However, the witness had explained that the victim was "awfully upset" and that she "just held onto the baby and she was visibly upset" and anxiously waited for defendant to leave the house before returning thereto.

CRE 803(2) permits the introduction into evidence of "[a] statement relating to a startling event or condition made while the declarant was under the stress or excitement caused by the event or condition." This exception has been liberally interpreted so as to extend to statements made following a lapse of time from the startling event itself. *People v. Ojeda, supra.* And, because the duration of stress will obviously vary with the intensity of the experience and the emotional endowment of the individual, the exception necessarily vests the trial court with broad discretion in applying the rule. *People v. Lagunas*, 710 P.2d 1145 (Colo.App.1985); *McCormick on Evidence* § 297 (3d. Ed.1984).

Here, we conclude that with regard to both segments of disputed testimony, there was sufficient evidence that the declarant was still under the stress or excitement of a startling event. *See People v. Galloway*, 726 P.2d 249 (Colo.App.1986) (victim "nervous and upset" because of alleged sexual assault); *People v. Bashara*, 677 P.2d 1376 (Colo.App.1983) (victim of sexual assault was "obviously upset.") Accordingly, the

trial court did not abuse its discretion in admitting the subject evidence.

### III.

■ Defendant next contends that the trial court abused its discretion in admitting, under the excited utterance exception, statements the Hulsing children gave to police a short time after the shooting. We disagree.

■ The excited utterance exception extends to statements made in response to questioning. *People v. Ojeda, supra.* And, an inquiry, especially when it is of a general nature and addressed to a young child is not sufficient to undo the underlying basis in reliability for the excited utterance exception. *People in Interest of O.E.P.,* 654 P.2d 312 (Colo.1982).

Here, the questioning of the children by police took place within 15–20 minutes of the time the police first arrived at the scene and within less than an hour after the children had witnessed or heard the incident occur. Moreover, many of the questions asked were open-ended general questions such as: "What happened?"; "Where were you?"; or, "What did you see?"

Additionally, the record reflects that at the time of the police questioning, both children were extremely agitated because of the shooting. One child was described variously as "dazed," "very upset," "very frightened," and "almost on the verge of ... going into shock." The second child was depicted by an officer as "bouncing off the walls" and "pretty wound up."

We conclude that the evidence of the children's emotional condition was more than sufficient to sustain the conclusion that at the time of questioning, they were still in a state of stress and excitement from the shooting. Accordingly, we conclude that the trial court did not abuse its discretion in admitting the statements under the excited utterance exception.

### IV.

■ Finally, we also disagree with defendant's contention that the trial court abused its discretion by allowing into evidence opinion testimony from a lay witness.

CRE 701 provides that a lay witness may offer opinion testimony provided the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." Whether the evidence is sufficient "to establish the qualifications and knowledge of a witness to express an opinion based on physical facts [the witness has perceived or] observed is a question for the trial court, not subject to reversal unless clearly erroneous." *Farley v. People,* 746 P.2d 956 (Colo.1987).

Here, a co-worker of the victim testified that on several occasions, she, at the victim's request, "listened in" on phone conversations between defendant and the victim while the victim was at work. During one of these phone conversations, the co-worker testified that defendant stated the following:

> "He said items like she [the victim] was screwing around on him, that she's a slut, a fucking slut, all sorts of things, that she was going out on him and just showing extreme jealousy and being verbally abusive."

Because the witness actually heard the defendant's statements, her characterization of those statements as "verbally abusive" and "showing extreme jealousy" were rationally based upon her own perceptions. And, her description was helpful in clarifying the overall nature of defendant's statements.

Accordingly, we perceive no abuse of discretion by the trial court in admitting the evidence.

The judgment is affirmed.

NEY and DAVIDSON, JJ., concur.