**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Ronald J. VIGOA, Respondent.**

**No. 92SA257.**

Supreme Court of Colorado, En Banc.

Dec. 1, 1992.

Norman S. Early, Jr., Dist. Atty., Second Judicial Dist., Nathan B. Coats, Chief Appellate Deputy Dist. Atty., Everett Engstrom, Deputy Dist. Atty., Denver, for plaintiff-appellant.

David F. Vela, State Public Defender, James S. Covino, Deputy State Public Defender, Denver, for defendant-appellee.

Justice QUINN delivered the Opinion of the Court.

The question in this case is whether the defendant's request for court-appointed counsel made in connection with a Crim.P. 5 proceeding, which was conducted subsequent to the defendant's arrest but prior to the actual filing of a criminal charge, constituted an invocation of the defendant's Sixth Amendment right to counsel for purposes of his *Miranda* rights [1] and thereby served to invalidate the defendant's subsequent custodial statement made to a police officer after a *Miranda* advisement and the defendant's waiver of his *Miranda* rights. The district court held that the defendant's application for court-appointed counsel triggered his Sixth Amendment right and that, because the defendant did not thereafter initiate any contact with the police for the purpose of making a statement and was not provided with counsel at the time of the custodial interrogation, the defendant's purported waiver of his *Miranda* rights was void and his custodial statement was constitutionally inadmissible. We hold that, under the circumstances of this case, the defendant's request for legal representation with respect to an as-yet unfiled criminal charge cannot reasonably be construed as a request for the presence of counsel at a pre-charging custodial interrogation initiated by the police shortly after the Crim.P. 5 proceeding.

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### I.

The defendant, Ronald J. Vigoa, is presently charged in the Denver District Court with second degree forgery. § 18–5–103, 8B C.R.S. (1986). He was arrested on December 3, 1991, and the next morning, December 4, while still in custody, he appeared before a county judge to be advised of his rights pursuant to Crim.P. 5(a)(1) & (2), which provides as follows:

(1) **Procedures Following Arrest.** If a peace officer or any other person makes an arrest, either with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district court. Thereafter, a felony complaint, information, or indictment shall be filed, if it has not already been filed, without unnecessary delay in the proper court and a copy thereof given to the defendant.

(2) **Appearance Before the Court.** At the first appearance of the defendant in court, it is the duty of the court to inform the defendant and make certain that the defendant understands the following:

(I) The defendant need make no statement and any statement made can and may be used against the defendant;

(II) The right to counsel;

(III) If indigent, the defendant has a right to request the appointment of counsel or consult with the public defender before any further proceedings are held;

(IV) Any plea the defendant makes must be voluntary and not the result of undue influence or coercion;

(V) The right to bail, if the offense is bailable, and the amount of bail that has been set by the court;

(VI) The nature of the charges;

(VII) The right to a jury trial;

(VIII) The right to demand and receive a preliminary hearing within a reasonable time to determine whether probable cause exists to believe that the offense charged was committed by the defendant.

The county court advised the defendant of his rights and the fact that bail had been set in the amount of $10,000. The defendant acknowledged in writing that he had been advised of his rights, and on the same day, either during or shortly after the Crim.P. 5 proceeding, he filled out a form entitled "Application for Court–Appointed Counsel." The application consisted essentially of a sworn statement of the defendant's financial status. In the application he indicated that he had no money and his only property was a 1972 Jeep valued at approximately $1500. On the same day the defendant and a deputy public defender signed a preprinted form with letterhead from the public defender's office, which stated as follows:

*Ron Vigoa* has stated that s/he would like to be represented by an attorney in the matter now under investigation for *Two ° Forg* [second degree forgery].

We have reviewed his/her application for representation by the Public Defender's Office, and we have made a preliminary determination that s/he qualifies for court-appointed counsel. We request appointment to this case as of this date.

At approximately 2:45 p.m. on December 4, before any charging document had yet been filed and before an attorney had been formally appointed by the court for the defendant, Detective Huff of the Denver Police Department contacted the defendant in jail. The detective advised the defendant of his *Miranda* rights, and the defendant acknowledged in writing that he understood his rights and that he wished to speak to the detective. The defendant thereafter made a statement to Detective Huff which, although not part of the record before us, we assume was inculpatory.

Two days later, on December 6, 1991, a complaint/information was filed in the Denver County Court charging the defendant with second-degree forgery. On December 10, 1991, the county court formally appointed the public defender's office to represent the defendant on the charge. After the case was bound over to the district court for trial, the defendant, through counsel, filed a motion to suppress the written statement that he had made to Detective Huff on December 4, 1991. The defendant

contended, as pertinent here, that he did not knowingly and voluntarily waive his privilege against self-incrimination or his right to counsel when he made the statement.

The district court conducted a hearing on the suppression motion, at which both the prosecution and defense basically presented evidence of the chronology of events that occurred on December 4, 1991. The district court granted the motion to suppress. It ruled that the defendant's "Application for Court–Appointed Counsel," filed with the county court on December 4, constituted a request for counsel not only for the purpose of legal representation during any judicial proceeding but also for the purpose of dealing with the police in connection with any interrogation that might thereafter take place. The People thereafter filed this interlocutory appeal and argue that the district court applied an incorrect legal standard in granting Vigoa's suppression motion.

## II.

The resolution of this case requires an analysis of the purpose and scope of two separate federal constitutional rights—the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel—in the context of a pre-charging custodial interrogation.

### A.

The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself." In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that a police officer, before questioning a suspect in custody, must warn the suspect of the following: that he has a right to remain silent; that anything he says can be used against him in court; that he has a right to the presence of an attorney; and that if he cannot afford an attorney, one will be appointed for him prior to questioning if he so desires. 384 U.S. at 478–79, 86 S.Ct. at 1629–30. The purpose of these warnings is "to dispel the compulsion inherent in custo-

dial surroundings." *Id.* at 458, 86 S.Ct. at 1619. The part of the *Miranda* warning concerning the suspect's right to counsel is designed to ensure that the protection of the Fifth Amendment privilege against self-incrimination "remains unfettered throughout the interrogation process." *Id.* at 469–70, 86 S.Ct. at 1625. The suspect, of course, may waive effectuation of these rights so long as the waiver is voluntarily, knowingly, and intelligently made. *Id.* at 479, 86 S.Ct. at 1630. If the suspect indicates at any stage of the custodial interrogation that he wishes to confer with an attorney before speaking to the police, or that he desires not to make a statement at all, then there can be no interrogation. *Id.* at 473–74, 86 S.Ct. at 1627.

In several cases decided subsequent to *Miranda,* the Supreme Court has developed additional safeguards designed to protect a suspect against the risk of being worn down by repeated efforts of the police to conduct a custodial interrogation. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Court held that once a suspect has been advised of his *Miranda* rights and has invoked his right to confer with counsel, the police may not conduct any further interrogation until counsel has been made available to the suspect, unless the suspect himself "initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484–85, 101 S.Ct. at 1884–85.

■ The *Edwards* rule was expanded in *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), where the Court applied *Edwards* to a custodial interrogation about a crime unrelated to the offense for which an earlier *Miranda* advisement had been given, even though the officer conducting the subsequent interrogation did not know of the suspect's invocation of the right to counsel at the earlier *Miranda* advisement. The rationale underlying *Roberson* is that the Fifth Amendment privilege against self-incrimination, in contrast to the Sixth Amendment right to counsel, is not offense-specific, so that a suspect's request for counsel after a *Miranda* advisement is tantamount to an expressed desire to deal with the police

only through counsel in regard to a custodial interrogation directed to *any* crime and not merely the offense for which the suspect has been arrested. 486 U.S. at 685, 108 S.Ct. at 2100. The Court expanded *Edwards* even further in *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), by holding that, once a suspect invokes his right to counsel pursuant to a *Miranda* advisement, the police must not only make counsel available to the suspect but also "may not reinstate interrogation without counsel present, whether or not the accused has consulted with his attorney." 498 U.S. at 153, 111 S.Ct. at 491.

■ The *Miranda–Edwards* rule thus turns on the suspect's invocation of the right to counsel after a *Miranda* advisement. Because *Miranda* rests exclusively on the Fifth Amendment privilege against self-incrimination, *Moran v. Burbine*, 475 U.S. 412, 430, 106 S.Ct. 1135, 1145, 89 L.Ed.2d 410 (1986); *Fare v. Michael C.*, 442 U.S. 707, 709, 99 S.Ct. 2560, 2563, 61 L.Ed.2d 197 (1979); *Kirby v. Illinois*, 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972) (opinion of Stewart, J., announcing judgment of Court), a suspect's request for counsel at a custodial interrogation vests a suspect with the right to confer with counsel prior to or during a custodial interrogation for the purpose of adequately safeguarding the suspect's privilege against self-incrimination, but does not trigger the array of protections otherwise encompassed by the Sixth Amendment in a criminal prosecution. *Burbine*, 475 U.S. at 430–32, 106 S.Ct. at 1145–46.

### B.

■ The Sixth Amendment to the United States Constitution states, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defence." The Supreme Court has held that the Sixth Amendment right to counsel attaches only at or after a criminal prosecution has been commenced against an accused:

> That interpretation of the Sixth Amendment right to counsel is consistent not only with the literal language of the Amendment, which requires the existence of both a "criminal prosecutio[n]" and an "accused," but also with the purposes which we have recognized that the right to counsel serves. We have recognized that the "core purpose" of the counsel guarantee is to ensure aid at trial "when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor."

*United States v. Gouveia*, 467 U.S. 180, 188–89, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984) (quoting *United States v. Ash*, 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973)).[2] The critical test for purposes of triggering the Sixth Amendment right to counsel is "the initiation of adversarial judicial criminal proceedings— whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby*, 406 U.S. at 689, 92 S.Ct. at 1882.[3] Thus, in the context of a police-initiated interrogation or conversation with an accused, even though the interrogation or conversation may be noncustodial, the Sixth Amendment provides a constitutional remedy, independent of the privilege against self-incrimination, for the suppression of the accused's statements if the police-initiated interrogation or conver-

---

**2.** The literal language of the Sixth Amendment, referred to in *Gouveia*, states:

> In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining wit-

nesses in his favor; and to have the assistance of counsel for his defence.

**3.** We have similarly observed that an accused is not entitled to the Sixth Amendment right to counsel until "that point when 'judicial proceedings have been initiated against him—"whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." '" *People v. Aalbu*, 696 P.2d 796, 807 (Colo.1985) (quoting *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977)).

sation takes place after the commencement of a criminal prosecution and in the absence of a valid waiver of the accused's right to counsel. *E.g., Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (Sixth Amendment required suppression of defendant's incriminating statement to police while in custody, under circumstances where officer made "Christian burial speech" to defendant and thereby elicited incriminating statement from defendant in the absence of effective waiver of defendant's right to counsel, after judicial proceedings had been commenced against defendant who had retained a lawyer); *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (undercover governmental agent's conduct in eliciting noncustodial incriminating statement from defendant, after defendant had been indicted and retained counsel, violated defendant's Sixth Amendment right and required suppression of noncustodial statement).

■ Recently, in *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Supreme Court analyzed the interrelationship between the Fifth Amendment privilege against self-incrimination and the Sixth Amendment right to counsel in the context of a police-conducted custodial interrogation of an accused following his request for counsel at a judicial proceeding on another charge. McNeil, who was represented by a public defender, appeared in court for a bail hearing and the setting of a preliminary hearing on a charge of armed robbery in West Allis, Wisconsin. Subsequent to the bail hearing the police, while McNeil was still in custody, advised him of his *Miranda* rights, obtained a waiver of those rights, and elicited an incriminating statement about McNeil's involvement in other crimes—murder, attempted murder, and burglary—in another jurisdiction. On the day following his inculpatory statement, McNeil was formally charged with those other offenses and was transferred to the other jurisdiction, Caledonia, Wisconsin. McNeil claimed that his appearance in court with an attorney on the armed robbery "constituted an invocation of the *Miranda* right to counsel, and that any subse-

quent waiver of that right during police-initiated questioning regarding *any* offense was invalid." —— U.S. at ——, 111 S.Ct. at 2207 (emphasis in original). The Supreme Court disagreed, holding that McNeil's invocation of his Sixth Amendment right to counsel at the bail hearing did not constitute an invocation of his right to counsel for purposes of his *Miranda* rights during the subsequent custodial interrogation with respect to other offenses unrelated to the bail hearing. In the course of its opinion, however, the Court accepted the proposition that at the time of McNeil's custodial statement his "Sixth Amendment right had attached and had been invoked with respect to the West Allis *armed robbery,* for which he had been formally charged." *Id.* (emphasis in original). Noting that the Sixth Amendment, in contrast to the Fifth Amendment privilege against self-incrimination, is "offense-specific" and does not attach until the initiation of adversarial judicial proceedings, the Court concluded that McNeil's request for an attorney at a bail hearing on an unrelated charge could not reasonably be construed as an expression of a desire "for the assistance of an attorney *in dealing with custodial interrogation by the police*" on an unrelated charge. —— U.S. at ——, 111 S.Ct. at 2209 (emphasis in original). *McNeil,* however, remains consistent with the principle that an accused's invocation of the Sixth Amendment right to counsel in connection with the initiation of a formal criminal prosecution will also constitute an expression of a desire for the assistance of an attorney in connection with any subsequent police-initiated interrogation on the very same charge for which the right to counsel had been invoked.

### III.

■ When the circumstances of this case are weighed against the federal constitutional standards applicable to the Fifth and Sixth Amendments, we are convinced that the district court erred in suppressing the defendant's statement made during the custodial interrogation on December 4, 1991, subsequent to the Crim.P. 5 proceed-

ing but before the initiation of a criminal prosecution against the defendant. The purpose of a Crim.P. 5 proceeding is "to furnish a prophylaxis against abuses in the detention process and, more importantly, to place the accused in early contact with a judicial officer so that the right to counsel may not only be clearly explained but also be implemented upon the accused's request." *People v. Heintze,* 200 Colo. 248, 614 P.2d 367, 371 (1980). If the defendant at the Crim.P. 5 proceeding had told the county court that he was incapable of or apprehensive about dealing with the police while he remained in custody and that he wanted to talk to a lawyer, the court then could have appointed a lawyer at that time for the express purpose of counseling the defendant with respect to his *Miranda* rights. If that occurred and the police thereafter obtained a *Miranda* waiver and a custodial statement from the defendant in the absence of the defendant's court-appointed lawyer, we would view any subsequent custodial interrogation in the absence of counsel as constitutionally suspect. We do not deal here with that situation, however, as no such request was made by the defendant.

Rather, what the defendant did was to fill out a financial statement and, through the public defender's office, requested the appointment of counsel to represent him in connection with an as-yet unfiled charge of second-degree forgery. The Application for Court–Appointed Counsel, filled out by the defendant on December 4, 1991, was essentially a status report of his financial condition made for the purpose of permitting the public defender's office to make a preliminary determination whether he qualified for court-appointed counsel. The deputy public defender's written memorandum also filed with the county court on December 4 merely stated that the public defender's office had preliminarily determined that the defendant qualified for court-appointed counsel and requested that the public defender's office be appointed to represent him on the "case." The "case," however, had not yet been filed in court, and, consequently, the defendant's request for appointment of counsel cannot reasonably be construed as an invocation of his *Miranda* right to counsel for purposes of dealing with the police during the subsequent custodial interrogation on the afternoon of December 4. *See People v. Benjamin,* 732 P.2d 1167 (Colo.1987) (defendant's execution of written request for determination of indigency by public defender office, and fact that defendant was interviewed by investigator from public defender's office, did not constitute invocation of right to counsel for purposes of subsequent custodial interrogation by police following defendant's execution of valid *Miranda* waiver).

We are of the view that, under the circumstances present here, the *Miranda–Edwards* rule provided the defendant with adequate protection for his privilege against self-incrimination with respect to any custodial interrogation prior to the formal commencement of a criminal prosecution against him. All the defendant had to do to protect his Fifth Amendment privilege against self-incrimination during the custodial interrogation of December 4, 1991, was to tell Detective Huff, after being advised of his *Miranda* rights, that he wanted to confer with counsel prior to making any statement. If he had done so, then Detective Huff would have been required to cease any interrogation and to refrain from approaching the defendant for further interrogation until counsel had been made available to him and was actually present. Instead, the defendant, after being advised of his *Miranda* rights and after acknowledging that he fully understood his rights, waived his right to confer with counsel and chose to make a statement to the detective.

We thus conclude that the defendant's custodial statement of December 4, 1991, satisfied the standards of constitutional admissibility applicable to a custodial statement made prior to the commencement of a formal criminal prosecution against an accused. The suppression ruling of the district court is accordingly reversed.