The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Gloria RIDLEY, Defendant–Appellant.

No. 92CA1924.

Colorado Court of Appeals,
Div. IV.

March 10, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Jeffrey H. Cahn, Westminster, for defendant-appellant.

Opinion by Judge ROTHENBERG.

Defendant, Gloria Ridley, appeals the judgment of conviction entered upon a jury verdict finding her guilty of aggravated distribution of cocaine. We affirm.

In March 1992, Ridley's ex-husband met with undercover agents of the Drug Enforcement Administration (DEA) and provided them information concerning Ridley's alleged drug trafficking activities. He also agreed to become a paid DEA informant.

On March 23, 1992, Ridley was arrested for aggravated distribution of cocaine. Her ex-husband cooperated in the arrest.

On March 25, 1992, shortly before Ridley was released from jail on bond, she was approached by DEA agents who asked her to become a DEA informant and to broker other large drug deals in that capacity. She agreed, and, upon her release that day from jail, she met with DEA agents, signed a cooperation agreement, and gave them certain information. Her purpose in cooperating was to obtain leniency on her cocaine charge.

On March 27, 1992, Ridley was formally charged with aggravated distribution of cocaine and appointed counsel. Her counsel was not told of her status as a DEA informant.

During the next few weeks, Ridley attempted to set up deals with third parties to sell large amounts of cocaine to undercover agents. However, the deals did not materialize, and, for that and other reasons, she was terminated as an informant and rearrested.

Three months before trial, Ridley formally filed a Notice of Defense advising the prosecution that her defenses were "Entrapment, failure of prosecution to establish mental element beyond reasonable doubt."

At trial, Ridley's primary defense was entrapment. She testified that her ex-husband, working as an undercover DEA informant, had initiated the March 23rd drug transaction and had induced her to enter into it with promises of reconciliation. Although she admitted that she previously had sold a small amount of cocaine for a third party on March 11, 1992, she otherwise denied involvement in drug transactions before the transaction for which she was arrested.

In view of her entrapment defense, the trial court allowed the prosecution to bring in evidence during its case-in-chief of Ridley's willingness to arrange large cocaine transactions as a DEA informant shortly after her arrest. The court denied her motion to suppress all such evidence of her statements and activities as an undercover DEA agent, and rejected her contention that her rights under the Fifth, Sixth and Fourteenth Amendments had been violated.

I.

■ Ridley first contends her constitutional right to effective assistance of counsel was denied by the prosecution's introduction of evidence that she arranged large cocaine transactions for DEA agents following her arrest for aggravated distribution of cocaine. Although we agree Ridley's Sixth Amendment rights were violated, under the circumstances of this case, we conclude that reversal is not required.

■ A defendant's Sixth Amendment right to counsel attaches at or after the time adversary judicial proceedings have been initiated against her whether by way of formal

charge, preliminary hearing, indictment, or arraignment. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). *See People v. Anderson*, 842 P.2d 621 (Colo.1992).

In *Moran v. Burbine*, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410, 427 (1986), the Court discussed the scope of the Sixth Amendment protection afforded once it has attached, stating:

> [A]fter the first charging proceeding the government may not deliberately elicit incriminating statements from an accused out of the presence of counsel.

*See also People v. Vigoa*, 841 P.2d 311, 315 (Colo.1992) ("[E]ven though the interrogation or conversation may be noncustodial, the Sixth Amendment provides a constitutional remedy, independent of the privilege against self-incrimination....").

Here, Ridley's Sixth Amendment rights attached on March 27, 1992, when she was formally charged. Thus, her initial statements to DEA agents on March 25th were not in violation of her right to counsel.

However, the trial court did not limit the prosecution to the statements and activities that occurred before her right to counsel attached; it allowed *all* such evidence, concluding that *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), was dispositive of the issue. We do not give *McNeil* as expansive an interpretation.

In *McNeil*, the defendant was charged with armed robbery in West Allis, Wisconsin, and appeared with a public defender at his bail hearing. While in jail on the robbery charge, he was questioned by police about a murder and other crimes occurring in Caledonia, Wisconsin, which were unrelated to the armed robbery. After being advised of his *Miranda* rights, defendant waived his rights and made incriminatory statements about the Caledonia offenses outside the presence of counsel, which were admitted at trial on the Caledonia offenses.

The court found no violation of McNeil's Sixth Amendment right because it ruled that the Sixth Amendment right to counsel is "offense-specific." In other words, a defendant's request for counsel at a bond hearing on one offense does not preclude police custo-dial interrogation in the absence of counsel on an unrelated and previously uncharged offense. Thus, the prosecution was free to use McNeil's incriminating statements at his trial on the Caledonia offenses because his counsel had been appointed to represent him only on the other offense.

Ridley's circumstances are different. The damaging statements obtained from her by DEA were not introduced in an unrelated trial. They were introduced against her in the trial of the same drug trafficking offense to which her Sixth Amendment right to counsel had already attached.

We therefore conclude that, there being no waiver of Ridley's right to counsel, the prosecution should not have been permitted to introduce *in its case-in-chief* the evidence obtained from her in her counsel's absence after her Sixth Amendment right to counsel attached on March 27, 1992, when formal proceedings were initiated against her. *See Michigan v. Harvey*, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990).

■ Nevertheless, we also conclude that, under the circumstances at issue, no reversible error occurred.

In *Harris v. New York*, 401 U.S. 222, 225–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1, 4–5 (1971), the Court held that, even though an accused's statements were inadmissible to establish the prosecution's case-in-chief due to a *Miranda* violation, if the accused took the stand and testified, the statements could be used for impeachment, provided that they were not coerced or involuntary statements:

> Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand [defendant] was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize the traditional truth-testing devices of the adversary process.... The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.

In *Michigan v. Harvey, supra,* the same rule was extended to statements taken in violation of the Sixth Amendment right to counsel. *See Lanari v. People,* 827 P.2d 495 (Colo. 1992).

■ After a hearing, the trial court found that Ridley's statements to DEA agents following her arrest were not coerced or involuntary. Since there is record support for that finding, it is binding on this court. *People v. Jiminez,* 863 P.2d 981 (Colo.1993).

As previously noted, at trial, Ridley relied primarily on the defense of entrapment and testified that she was not involved with large drug transactions or persons selling drugs. Thus, even though her Sixth Amendment right to counsel was violated, once she chose to take the stand and testify, she was not free to commit perjury. The prosecution had the right to impeach her testimony claiming entrapment by showing her predisposition as a drug dealer, that she knew persons involved in large drug transactions, and that she was able to facilitate such transactions without the assistance of or pressure from her ex-husband. *See Michigan v. Harvey, supra; see also People v. Branch,* 805 P.2d 1075 (Colo.1991).

■ Further, the court has considerable discretion in determining the order of proof at trial, and it may exercise that discretion by allowing the prosecution occasionally to present evidence in anticipation of a defense previously disclosed by the defendant. *Cf. People v. Lewis,* 180 Colo. 423, 506 P.2d 125 (Colo.1973); *Moore v. People,* 171 Colo. 338, 467 P.2d 50 (1970) (party is *not required to anticipate* testimony the opposing party will offer in defense and is entitled to introduce any competent evidence to refute or disprove other party's proof).

In sum, even though the evidence of her DEA cooperative activities should not have been permitted in the prosecution's case-in-chief based upon the violation of Ridley's Sixth Amendment right to counsel, because it was clearly admissible in rebuttal to impeach Ridley's claim of entrapment, we conclude that any error by the trial court in admitting the evidence out of order was harmless beyond a reasonable doubt. *See Chapman v.* *California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)

## II.

■ Ridley next contends that her right against self-incrimination was violated by the introduction of the evidence described above. We disagree.

■ The Fifth Amendment provides that no person shall be compelled to be a witness against herself. However, volunteered statements are not proscribed by the constitutional mandate, and here, the trial court specifically found that her statements were voluntary. *See People v. Mangum,* 189 Colo. 246, 539 P.2d 120 (1975).

■ In addition, the Fifth Amendment protections afforded by *Miranda* are triggered by custodial interrogation. *See McNeil v. Wisconsin, supra; People v. Vigoa, supra.* Ridley was not in custody nor the subject of police interrogation at the time she told the DEA agents about the other drug transactions and agreed to arrange at least one such transaction.

## III.

■ Ridley's final contention is that her due process rights were violated by the introduction of the evidence obtained while defendant acted as a DEA informant. Again, we disagree.

In *People v. Fisher,* 657 P.2d 922 (Colo. 1983) and *People v. Manning,* 672 P.2d 499 (Colo.1983), our supreme court recognized that certain conduct by law enforcement may deprive defendants of the fundamental fairness guaranteed by the Fourteenth Amendment and Colo. Const. art. II, § 25.

In *Fisher,* a police officer promised the defendant that his statements made in a videotaped interview would not be used against him in any criminal proceeding. The court enforced that promise, concluding that fundamental fairness required it.

Similarly, in *Manning, supra,* 672 P.2d at 503, a police detective interviewed the main suspect in a murder investigation and made a deliberate decision not to read her her *Miranda* rights. The detective added:

I am going to interview you as a witness in this thing. Because I am not going to advise you of your rights, they cannot prosecute you for this.

The supreme court disallowed Manning's confession implicating her in the murder and held that the detective's statements to her constituted an implied promise not to prosecute her for any statements she made regarding the case.

Here, although the facts are admittedly unusual, they do not involve the type of fundamental unfairness described in *Fisher* and *Manning*. The trial court specifically found that the only promise made to Ridley by DEA agents was that they would communicate her cooperation to the prosecution and specifically rejected Ridley's testimony that other promises were made to her.

In any event, Ridley's statements were admissible to impeach her when she took the stand and testified that she was entrapped. *See Harris v. New York, supra.* Thus, we conclude that her right to due process was not violated.

The judgment is affirmed.

PLANK and MARQUEZ, JJ., concur.